Dominic **BIONDO**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17824.

United States Court of Appeals
Eighth Circuit.

July 20, 1965.

Emanuel Shapiro, St. Louis, Mo., made argument and filed brief with Morris A. Shenker, St. Louis, Mo., for appellant.

Robert J. Koster, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed brief with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

The principal question defendant Dominic Biondo raises in appealing his conviction for knowingly accepting wagers as a bookmaker without payment of the requisite federal tax in violation of 26 U.S.C.A. § 7262 is whether under the Fourth Amendment, the United States Commissioner who issued the search warrant which led to his arrest acted upon sufficient evidence of probable cause that the premises searched contained property for commission of the offense charged.

At defendant's trial to the court on the one count information, he moved to suppress introduction by the Government

of the incriminating evidence of wagering paraphernalia seized as a result of the alleged invalid search warrant. The Government satisfied the District Court that firsthand information gained from five days' surveillance of the premises by one and sometimes two special agents of the Internal Revenue Service provided the Commissioner with credible sworn affidavits on which he could constitutionally justify issuance of the warrant.

These affidavits revealed that defendant had been regularly observed between March 4 and 9, 1964 visiting a one-story apartment in St. Louis County rented to one David Johnson, a school teacher. On these visits, defendant would arrive around 10:00 a. m. in an automobile registered in his name, enter the premises with a key, and remain there until his departure about 2:30 p. m. Defendant was seen carrying in his hand a daily racing form onto the premises on two of these occasions and once was observed, in the words of the surveilling agent, as having "what appeared to be a folded scratch sheet protruding from his right rear trouser pocket." Both agents affirmed that defendant was "known to the St. Louis Metropolitan Police Department as a bookmaker, and an associate of gamblers and police characters" and had been arrested during raids by the municipal police on handbooks on two separate occasions in 1960. One agent stated that records of the telephone company showed that "two special foreign zone service telephones, one with a non-published number [were] in service at this address and assigned to Mr. Johnson." It was further stated that a check of Internal Revenue files indicated that neither defendant nor Johnson had acquired a federal wagering tax stamp, and therefore it was believed that. the premises were being used to conduct an illegal handbook operation.

The Fourth Amendment to the Constitution of the United States provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The latest pronouncement of the Supreme Court on the Fourth Amendment requirement of probable cause necessary in obtaining a search warrant may be found in Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). There, local state officers had applied to a Justice of the Peace for a state search warrant on the basis of an affidavit which stated the officers had "received reliable information from a credible person" that narcotics were being illegally stored for sale on certain premises. Mr. Justice Goldberg delivered the majority opinion holding inadmissible the evidence procured as a result of the invalid search warrant issued on a single affidavit deemed insufficient for a finding of probable cause.

In so doing, he laid down the touchstones law enforcement officers must meet and the caveats they must avoid as prerequisite to a constitutional search:

(1) A "neutral and detached" magistrate is to be preferred in authorizing a search over the hurried actions of the arresting offices;

(2) A reviewing court should pay substantial deference to a judicial determination of probable cause insofar as the competency and persuasiveness of the supporting evidence as opposed to careful scrutiny of the evidence motivating an officer's search without a warrant;

(3) When affidavits are relied upon by the magistrate, they may contain hearsay information and need not reflect the direct personal observations of the affiant, nor disclose the identity of any informant;

(4) These affidavits must contain some of the facts and underlying circumstances, not mere conclusions, suspicions or beliefs of the attesting officer or his informer, in order that the magistrate may perform his neutral function of in-

dependently drawing any inferences of probable cause.

█ We think the affidavits supporting issuance of the search warrant in the instant case far surpassed acceptable compliance with the criteria of *Aguilar*. The federal agents assigned to investigate the suspected illegal activities of defendant proceeded in a deliberate and unhurried manner. After nearly a week of surveillance of the premises, they made in their affidavits to the Commissioner a thorough, factual report of their findings. Their findings, which included seeing defendant carry onto the premises published information of assistance to wagering, were based almost entirely on direct personal observations. References to their sources of hearsay information such as the defendant's predeliction to engage in handbook operations and the unusual telephonic equipment located on the premises, which is sometimes used for this purpose, were divulged to enable easy confirmation by the Commissioner if he had so desired. Judicial determination of the probative value of the information contained in the affidavits was the task of the Commissioner. And his decision that probable cause existed for issuance of the search warrants is not to be reversed upon review because the affiants perhaps did not possess that degree of legal evidence necessary for a conviction. See Porter v. United States, 335 F.2d 602, 605 (9th Cir. 1964), cert. denied 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965); United States v. Moriarity, 327 F.2d 345, 347–348 (3rd Cir. 1964).

Thus, armed with a valid search warrant, federal and state officers attempted to gain entry to the premises which were occupied at the time solely by defendant. They announced in an audible voice their authority and purpose, and after no response within lapse of a minute, they broke down the door which was chained and barricaded with a desk from inside. The search warrant was read to defendant who the record does not show put up any resistance to its execution. Some of the evidence seized and introduced at trial consisted of a large number of daily racing forms and programs, racing "scratch sheets," "bet tabs" listing bets on horse races and college and professional basketball games and numerous other sporting publications essential to a handbook operation. While at the premises, one of the officers answered numerous telephone calls, without identifying himself, and pretended to place the bets of the callers on various horse races throughout the country. One such caller even warned his listener of knowledge that "the 'Feds' were sitting on the joint."

No evidence was offered on behalf of the defense. Under these circumstances we hardly feel that the defendant is in a position to seriously challenge the sufficiency of the evidence supporting the District Court's finding of guilt.

█ Nevertheless, the defendant argues that he was not guilty as charged of violating 26 U.S.C.A. § 7262 for nonpayment of the wagering tax imposed by 26 U.S.C.A. § 4411 because there was no proof that he knew of the occupational tax and willfully avoided its payment.

This argument is mistakenly premised on belief that defendant was charged with a violation of 26 U.S.C.A. § 7203. This statute does specifically include willful failure to pay taxes generally as an element of a more severe offense which permits imposition of a stiffer maximum penalty of a fine up to $10,000.00 and one year imprisonment. See United States v. Marquez, 332 F.2d 162 (2nd Cir. 1964), cert. denied 379 U.S. 890, 85 S.Ct. 162, 13 L.Ed.2d 94 (1964); Edwards v. United States, 334 F.2d 360, (5th Cir. 1964), cert. denied 379 U.S. 1000, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965). However, defendant was charged with "willfully and knowingly" accepting wagers without payment of the occupational tax under § 7262, *not willful evasion* of this tax under § 7203. This lesser crime which penalizes an offender with only a fine of from $1,000.00 to $5,000.00 has been held not to require proof of guilty knowledge and willfulness as essential to conviction. Burks

v. United States, 287 F.2d 117, 125 (9th Cir. 1961), cert. denied 369 U.S. 841, 82 S.Ct. 868, 7 L.Ed.2d 846 (1962), reh. denied 369 U.S. 882, 82 S.Ct. 1143, 8 L.Ed.2d 284 (1962).

The judgment of conviction is affirmed.